JAMES B. GANTT, Contestant, v. JOHN C. BROWN, Contestee; HENRY C. TIMMONDS, Contestant, v. JOHN KENNISH, Contestee; HOWARD A. GASS, Contestant, v. WILLIAM P. EVANS, Contestee.

In Banc, February 9, 1911.

ELECTION CONTEST: In Supreme Court: Commissioner. In a contest for a State office, brought in the Supreme Court, two commissioners, one of each political party, should be appointed to take the evidence. [Per LAMM, J., in dissenting opinion.]

## Election Contest.

ON ORDER APPOINTING COMMISSIONER.

## DISSENTING OPINION

LAMM, J.—I dissent from the appointment of Judge Culver, not in one but in all three election contest cases, not because of any objection personal to him as a lawyer or as a citizen; but because:

The three cases are the first political election con-tests brought before the Supreme Court as original proceedings; therefore, we are making precedents. In such case, the maxim is: The chief thing is the be-ginning. It is too plain for controversy that to select one commissioner for all three cases necessarily re-sults in the commissioner belonging to one political party—unless our commissioner affiliated with no party, and this appointment is not of that character. This has a tendency to give a party cast or color to the inquest at the outset, and, while conscious of our own judicial independence and exalted duty, yet we can with profit heed Paul's admonition: Abstain from all appearance of evil. To that end, we should make two groups of cases, put one case in one and two in an-other. Then, to balance the power, we should se-lect two high-minded commissioners of opposite po-litical faith, one for one group and one for another, consolidate the cases for the purpose of hearing testi-mony, and order our commissioners to sit together and hear the evidence. If possible, they can make a joint report, or, if they cannot agree, separate re-ports. If it be said they would or could not agree, then the question is—Why? But, at worst, if they disa-gree on the facts it would not hinder us in our ulti-mate judgment, and besides that they would be amena-ble to our interlocutory orders and directions in the admissibility of evidence. In such way, we would pull down no blind on any window through which needed light, however dim, may come to aid us in the perform-ance of an admittedly delicate task. I think it the most likely road to arrive at an impartial and, there-fore, a just conclusion in the end.

I should not consent to the appointment of one Republican commissioner in all these cases, precisely as I do not consent to the appointment of one Demo-cratic commissioner, and for the same reason.. Juris-

prudence, says the wise Latin, is the science of the good and just, hence what is fair and good (i. e., in accord with those equities that have their seat in the human breast) cannot be bad law.

Therefore, because the majority of my sitting brethren do not agree with me in this behalf but rule in favor of one commissioner, and for no other reason, I dissent. *Ferriss, J.,* joins in this dissent.